UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STATE OF MICHIGAN,

    Plaintiff,

v.

BRIAN WILLIAM KEELY,

    Defendant.
_____/

Case No. 1:24-cr-115

Hon. Hala Y. Jarbou

## OPINION

Defendant Brian Keely removed a criminal case against him from state court under the federal officer removal statute, 28 U.S.C. § 1442. Plaintiff has charged Defendant for his actions that led to the death of Samuel Sterling. After holding an evidentiary hearing, this Court determined that removal was proper. (*See Michigan v. Keely*, No. 1:24-cv-672 (W.D. Mich.), 8/26/2024 Op., ECF No. 18.) Before the Court are Plaintiff's motions to remand the case (ECF No. 8) and for an evidentiary hearing regarding the motion to remand (ECF No. 33). The Court will deny both motions.

### I. BACKGROUND

#### A. Relevant Timeline

On April 17, 2024, Defendant and other members of a federal task force attempted to apprehend Sterling based on several warrants for his arrest. As Sterling fled from police on foot, Defendant approached him by vehicle. Defendant's vehicle collided with Sterling, knocking him against a brick wall. Sterling later died from his injuries.

Defendant's employer, the Michigan State Police ("MSP"), placed him on unpaid administrative leave the day after the incident. (4/18/2024 Letter, ECF No. 30.)

Plaintiff charged Defendant with homicide in state court on May 28, 2024. (Felony Compl., ECF No. 1.) That same day, Defendant wrote to the MSP requesting a "DROP retirement." (5/28/2024 Mem., ECF No. 8-3.)

On June 3, 2024, a human resources employee for the State of Michigan's Civil Service Commission entered an "Employee Departure Report" noting Defendant's retirement. (ECF No. 8-4.) The report provides an "Action Eff Date" of April 17, 2024. (*Id.*)

On June 28, 2024, Defendant removed the case to this Court under the federal officer removal statute, 28 U.S.C. § 1442.

On July 8, 2024, the Michigan Office of Retirement Services sent Defendant a letter informing him that it was processing his retirement application. (8/7/2024 Letter, ECF No. 26-1, PageID.114.) The letter estimated his retirement benefits for a "retirement effective date" of July 1, 2024. (*Id.*) It also suggested that he could "cancel [his] retirement application" before that date (though that date had already passed). (*Id.*)

**B. Motion to Remand**

Plaintiff asks the Court to remand the case back to state court because it contends that Defendant was not a federal officer at the time he removed the case from state court. When the Court initially decided that removal was proper, it had not received any evidence or argument from Plaintiff regarding Defendant's departure from the MSP. Plaintiff now argues that removal was improper because Defendant purportedly retired from the MSP on April 17, 2024. Thus, it contends that, at the time he removed this case from state court, Defendant could not invoke the removal statute. If Plaintiff is correct, the Court does not possess jurisdiction over the case. "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction," the Court must remand the case. 28 U.S.C. § 1447(c).

2

Defendant responds that he was still an officer of the United States at the time of removal because his retirement did not take effect until July 1, 2024. Based on the evidence before the Court, however, it is not clear when Defendant's employment with the MSP (and therefore his status as a federal officer) officially ended. On the one hand, the human resources report suggests that his retirement became effective as early as June 3, 2024, meaning he was not a federal officer at the time of removal. On the other hand, his retirement benefits letter suggests that he applied for a retirement that would not take effect until July 1, 2024, and that his application was still in process as of July 8, 2024, meaning that he may have still been an MSP employee at the time of removal on June 28.[1]

The Court initially scheduled a hearing to resolve this factual dispute but then decided that such a hearing was not necessary because Plaintiff's motion is meritless regardless of the timing of Defendant's retirement (or suspension).

**C. Removal Standard**

28 U.S.C. § 1442 permits the following individuals to remove a criminal prosecution from state court to federal court: "*any officer (or any person acting under that officer) of the United States* or of any agency thereof . . . for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1) (emphasis added). The Court previously determined that Defendant satisfied this provision in two ways. First, as a Special Deputy United States Marshal and member of the United States Marshal Service task force, he was an officer of the United States. Second, when attempting to arrest Sterling, he was "acting under" an officer of the United States because he was acting under the command and supervision of a United States Marshal.

---

[1] Neither party addresses whether Defendant's suspension revoked his status as a federal officer.

3

Plaintiff challenges these conclusions, citing *Georgia v. Meadows*, 88 F.4th 1331 (11th Cir. 2023). There, the Court of Appeals for the Eleventh Circuit determined, for the first time "in the 190-year history of the federal-officer removal statute," that a former federal officer is not an "officer of the United States" under 28 U.S.C. § 1442(a)(1). *See Meadows*, 88 F.4th at 1338. In other words, that court read "officer" in the statute to refer to *current* federal officers only, excluding individuals who may have been federal officers at the time of their charged conduct, but who are no longer federal officers at the time of removal. *See id.*

Plaintiff urges this Court to adopt the same interpretation. And Plaintiff argues that, because Defendant retired from service in April of 2024, he was not an officer of the United States when Plaintiff charged him or when he removed the case to this Court in July of 2024. Finally, Plaintiff argues that the Court should read "acting under an officer of the United States" in a similar manner. Plaintiff contends that this language only refers to individuals who are acting under an officer of the United States at the time of the state court proceedings or at the time of removal. Thus, Plaintiff argues that the removal statute does not apply to Defendant.

### D. Analysis

As indicated, the Court concluded that Plaintiff was both a federal officer and a person "acting under" a federal officer when he was attempting to apprehend Sterling. *Meadows* focuses solely on the meaning of "officer of the United States." It does not discuss the "acting under" language, so it provides no insight into how to interpret it. The removal statute clearly applies to federal officers "or" to persons acting under them. Defendant does not have to be both. Consequently, even if the holding in *Meadows* is correct, it does not control the outcome here because Defendant can rely on the "acting under" provision whether or not he was an officer of the United States after the incident involving Sterling.

4

The Court is not persuaded that it should extend the holding in *Meadows* to persons acting under a federal officer. Plaintiff cites no case that has limited the scope of the phrase "person acting under" a federal officer to those individuals who were acting under a federal officer at the time the state court proceedings commenced or at the time of removal. Indeed, many courts have declined to extend *Meadows* in the manner proposed by Plaintiff. *See, e.g.*, *Georgia v. Kim*, No. 1:23-CR-287-MLB, 2024 WL 4298258, at *1-2 (N.D. Ga. May 3, 2024); *Ditcharo v. Union Pac. R.R. Co.*, No. CV 23-7399, 2024 WL 1433652, at *2 (E.D. La. Apr. 3, 2024); *Marcella v. Huntington Ingalls Inc.*, No. CV 24-780, 2024 WL 2814044, at *4 (E.D. La. June 3, 2024); *Goffner v. Avondale Indus., Inc.*, No. CV 22-3047, 2024 WL 2844542, at *4 (E.D. La. June 5, 2024); *Jacob v. La. Ins. Guar. Ass'n*, No. CV 23-7414, 2024 WL 3102165, at *2 (E.D. La. June 24, 2024).

Among other things, these courts note that the term "any person" is broader than "officer"; it refers to all individuals, including those who happen to be former officers. *See Kim*, 2024 WL 4298258, at *1. And "the relevant time for determining whether such a person 'act[ed] under' an officer is 'when [he] took the actions complained of in th[e] case,' not when his prosecution commenced or when he removed to federal court." *Id.* (quoting *Caver v. Cent. Ala. Elec. Coop.*, 845 F.3d 1135, 1142 (11th Cir. 2017)).

Although the Court of Appeals for the Sixth Circuit has not directly addressed Plaintiff's argument, that court looks to the time of the challenged act to determine whether a person qualifies as one "acting under a federal officer." It recently stated that a private entity could qualify for removal if it showed that "its *challenged actions were performed* under the federal government's direction, control, or close supervision." *Goins v. Saint Elizabeth Med. Ctr., Inc.*, No. 22-6070, 2024 WL 229568, at *3 (6th Cir. Jan. 22, 2024) (emphasis added). The Court of Appeals has even paraphrased the removal statute to use the past tense for the verb "acting," indicating that the

defendant does not have to be acting under a federal officer when invoking the statute. *See Bennett v. MIS Corp.*, 607 F.3d 1076, 1085 (6th Cir. 2010) ("First, [defendant] must establish that it is a 'person' within the meaning of the statute who '*act[ed]* under [a federal] officer[.]'" (quoting 28 U.S.C. § 1442(a)(1) (emphasis added) (other alterations in original))); *accord Hudak v. Elmcroft of Sycamore Hills*, 58 F.4th 845, 858 (6th Cir. 2023) (requiring a defendant to show that it "acted under a federal officer"). In other words, that court does not require that a defendant continue working under a federal officer up to the time the state court proceedings commence or up to the time of removal. Instead, it requires that the defendant's actions that are challenged in the state court proceedings were performed under the direction of a federal officer. *See Goins*, 2024 WL 229568, at *3. Defendant has satisfied that test. The actions at issue in these criminal proceedings are those involving his attempt to arrest Sterling. When taking those actions, Defendant was acting under a federal officer.

    A test that ties "acting under" to the challenged "act under color of office" fits naturally with the language of the statute. It is also consistent with the purpose of the removal statute, which is to "'to protect the Federal Government from the interference with its operations' that would occur if a federal officer could be tried in state court for a state offense related to the operation." *Mays v. City of Flint*, 871 F.3d 437, 443 (6th Cir. 2017) (quoting *Watson v. Phillip Morris Cos.*, 551 U.S. 142, 150 (2007)). One of the chief concerns underlying the removal statute is that "states that were antagonistic toward federal government operations might use state court proceedings to thwart the enforcement of federal law." *Id.* State court proceedings were viewed with suspicion because they could "reflect 'local prejudice' against unpopular federal laws or federal officials." *Watson*, 551 U.S. at 150. The removal statute allows federal officers to avoid that potential prejudice by removing a state court case to "a federal forum in which to litigate the merits of

immunity defenses" available to such officials under federal law. *Id.* at 151 (quoting *Jefferson Cnty. v. Acker*, 527 U.S. 423, 447 (1999) (Scalia, J., concurring in part)); *see Willingham v. Morgan*, 395 U.S. 402, 407 (1969) ("[O]ne of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court."). Many of these considerations also apply to individuals "acting under" a federal officer. *Id.*

Importantly, the immunity defense covers the *acts* of a federal agent, i.e., a defendant "who claim[s] federal authority to *act* as he did." *Kentucky v. Long*, 837 F.2d 727, 742 (6th Cir. 1988) (emphasis added). It makes little sense to strip a federal officer of his right to defend his official acts in a federal forum as soon as the officer leaves federal service. Such a rule would potentially hinder federal operations by diminishing the statutory and "constitutional protection which cloaks a federal agent in the performance of his duties." *Id.*

Plaintiff's position is even more tenuous when applied to a private person aiding the federal government in the performance of its functions. Such a person is more likely to work for the government on a discrete task or for a limited time period—too short a time to still be working for the government when they are later charged with a crime in state court related to their work. In one case, for instance, a state charged "a group of prohibition agents and a private person acting as their driver with a murder committed during a distillery raid." *Watson*, 551 U.S. at 149-50 (discussing *Maryland v. Soper (No. 1)*, 270 U.S. 9 (1926)). The Supreme Court stated that "the private person acting 'as a chauffeur and helper to the four officers under their orders and . . . direction' had 'the same right to the benefit of' the removal provision as did the federal agents." *Id.* at 150 (quoting *Soper*, 270 U.S. at 30). The Court apparently concluded that the chauffeur was entitled to the same protection as the federal officers because he acted under their direction during

7

the raid. But under Plaintiff's interpretation, he would lose that protection once his work for the federal officers was complete.

Or consider *Bennett*, in which the Federal Aviation Administration ("FAA") hired the defendant, a mold remediation firm, to treat and remove mold from an air traffic control tower. *Bennett*, 607 F.3d at 1082. The defendant's remediation efforts allegedly caused toxic mold to spread throughout the building, injuring employees working there. *Id.* at 1082-83. *After the firm completed its remediation work*, the injured employees sued the firm in state court, seeking damages under the theory that the firm had been negligent in the performance of its contract with the FAA. *Id.* at 1083. The firm removed the case to federal court under the federal officer removal statute, arguing that it was acting under a federal officer when performing the contract. The Court of Appeals agreed with its argument. *Id.* at 1088. At no time did that court consider whether the firm was still acting under a federal officer when the state proceedings commenced or at the time of removal. Instead, that court focused solely on whether the firm was acting under a federal officer when performing the allegedly negligent remediation. *Id.* at 1087-88.

By contrast, under Plaintiff's interpretation of the removal statute, the defendant in *Bennett* would have been unable to litigate its immunity defense in federal court. This Court is not persuaded that it should depart from Sixth Circuit precedent.

In summary, Defendant is entitled to protection for his conduct during the attempted arrest of Sterling, including the protection of having his federal immunity defense decided in a federal forum. Even if Defendant was not a federal officer or acting under one at the time Plaintiff brought its charges or at the time Defendant removed this case to federal court, he qualifies for removal because he was acting under a federal officer at the time of the attempted arrest. Accordingly, the Court has jurisdiction over the case. It will not remand the case to state court.

## II. CONCLUSION

For the reasons discussed, the Court will deny Plaintiff's motion to remand the case. It will also deny Plaintiff's motion for an evidentiary hearing on the issue of remand because such a hearing is not necessary. An order will enter consistent with this Opinion.

Dated: December 11, 2024         /s/ Hala Y. Jarbou
                                 HALA Y. JARBOU
                                 CHIEF UNITED STATES DISTRICT JUDGE