IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PEOPLE OF THE STATE OF MICHIGAN,

          Plaintiffs,

vs.

BRIAN WILLIAM KEELY,

          Defendant.

Case No. 1:24-cr-115
ORAL ARGUMENT REQUESTED

HON. HALA Y. JARBOU
Chief District Court Judge

-----------------------------------------------------------/

ORONDE C. PATTERSON, P57211
ERIKA A. TUSAR, P56831
JOHN S. PALLAS, P42512
Assistant Attorneys General
Michigan Department of Attorney General
Criminal Trials Division
3030 W. Grand Blvd. #10-200
Detroit, MI 48202
(313) 456-0180
pattersono@michigan.gov
tusare@michigan.gov
pallasj@michigan.gov
------------------------------------------------------------
MARC E. CURTIS, P59274
Attorney for Defendant
800 E. Ellis Rd.
Norton Shores, MI 49441
(231) 375-0971
mcurtis@defenderoftheblue.com
------------------------------------------------------------

**MOTION IN LIMINE FOR THE ADMISSION OF AUTOPSY PHOTOGRAPHS**

**ORAL ARGUMENT REQUESTED**

Motion

1

NOW COMES THE PEOPLE OF THE STATE OF MICHIGAN, by and through Dana Nessel, Attorney General and Assistant Attorneys General, Oronde Patterson, Erika Tusar and John Pallas and respectfully move this Honorable Court to permit the introduction at trial of autopsy photographs of the deceased victim, Samuel Sterling.

<u>Brief in Support</u>

*Facts*

The defendant is charged with Homicide-Second Degree Murder and Homicide Involuntary Manslaughter.

Michigan State Police Department (hereafter MSP) began an investigation regarding the death of Samuel Da Jon Sterling (hereafter Sterling) on or about April 17, 2024.

The investigation revealed that the fatal incident occurred at the Burger King located at 5260 Eastern Avenue, Kentwood, MI 49508. Law enforcement from MSP, Kentwood Police Department, Wyoming Police Department, Kent County Sherrif's Department, Grand Rapids Police Department, Metropolitan Pattern Crime Team (hereafter MPACT) and the United States Marshal's office (Hereafter USMCTF) were part of a unit tasked with the responsibility of apprehending individuals with outstanding warrants, including Sterling.

During the alleged attempt to apprehend Sterling, Sterling noticed the police presence and ran from multiple officers on foot. Defendant was driving an

unmarked Hyundai Palisade SUV style vehicle and pinned Sterling against the wall of the Burger King on the drive thru side of the building.

EMS was called to the scene. Sterling was transported to U or M Metro Health Hospital. A short time later Sterling succumbed to the injuries suffered from the crash. Sterling's body was transferred to the Medical Examiner's Office for an autopsy.

*Argument*

1. The People are seeking admission of photographs that depict the following:[1]

    a. The autopsy photograph of decedent's face. It is a clinical photograph with identification number for the autopsy.
    b. The redacted autopsy photograph of decedent's legs. It is a clinical wide-angle photograph that depicts injuries to both legs.
    c. The autopsy photograph of the decedent's left leg. It is a closer clinical photograph of the injuries to the left leg.
    d. The autopsy photograph of the decedent's right leg (foot to knee). It is a clinical photograph that depict the injuries.
    e. The autopsy photograph of decedent's right leg. It is a closer clinical photograph that depict just the injuries.
    f. The redacted autopsy photograph of decedent's right hand. It is a clinical photograph that depicts no injuries to the hand.
    g. The redacted autopsy photograph of the decedent's left hand. It is a clinical photograph that depicts no injuries.
    h. The redacted autopsy photograph of the decedent's backside waist to just below the knees rolled forward from left to right exposing his lower extremities. It is the wide-angled clinical photograph documenting area of the injuries to the lower backside.
    i. The redacted autopsy photograph of the decedent's left hip area. It is a closer clinical photograph that depicts the injuries.
    j. The redacted autopsy photograph of the decedent's backside head to below the buttocks as he is rolled forward from left to right. It is a wide-angled clinical photograph that depicts location and injuries.
    k. The autopsy photograph of the decedent's backside mid back area. It is a closer clinical photograph that depicts the injuries.

---

[1] The autopsy photographs will be submitted separately to the Court.

    l. The redacted autopsy photograph of the decedent's left shoulder area as he is rolled forward. It is a closer clinical photograph that depicts the injuries.
    m. The autopsy photograph of the decedent's backside of his lower legs below the buttocks to the feet. It depicts no injuries.
    n. The autopsy photograph of the interior to the decedent's body cavity. It is a clinical photograph that depicts the injuries to the rib area and how extensive the damage was to the decedent's body. It depicts the tearing, breaking and pieces of the broken rib and hemorrhages to the lungs. There is no other way to view this injury.
    o. The autopsy photograph of the interior of the decedents body cavity. It is a clinical photograph that depicts the injury to the pelvic bone and how extensive the damage was. It depicts the large gap and break to the pelvis bone.
    p. The autopsy photograph of the interior of the decedent's body cavity. It is a clinical photograph to the bowel and mesentery area and how intensive the damage was to the decedent's body. It depicts detachment from bowel to top of spine. There is no other way to view this injury.
    q. Any other relevant photograph necessary based on questioning, cross examination and any other questioning as it relates to the medical examiner's testimony.

    The Medical Examiner will testify that the cause of Sterling's death was determined to be blunt force injuries including multiple rib fractures, a laceration to the spleen, bowel mesentery[2] and multiple pelvic fractures from an encounter with a motor vehicle. The manner of death was determined to be accident.

    FRE 402 (General Admissibility of Relevant Evidence) provides that: Relevant evidence is admissible unless and of the following provided otherwise: Unites States Constitution; a federal statute; these rules; or other rules prescribed by the Supreme Court. Irrelevant evidence is not admissible.

---

[2] Mesentery is the medical term for the membrane that attaches the intestines to the wall around the stomach area that holds it in place. [2]

4

In turn, FRE 401 (Test for Relevant Evidence) explains that: Evidence is relevant if: (a) is has any tendency to make a fact more or less probable than it would be without the evidence; (b) the fact is of consequence in determining the action.

Additionally, FRE 403 (Excluding Relevant Evidence for Prejudice, Confusion, Waste of Time, or Other Reasons) establishes that: The Court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

The Fifth Amendment to the United States Constitution states, in relevant part, that: "No person …shall… be deprived of life, liberty, or property, without due process of law…"  Similarly, the Fourteenth Amendment states: "No state shall… deprive any person of life, liberty, or property, without due process of law…"

The above-cited photographs are properly admissible as relevant and material under FRE 401 through 403.  The photographs are material evidence that both support and corroborate the medical examiner's testimony about the complainant's cause of death.  The photographs are probative since they help prove the defendant's intent to do great bodily harm, or act in wanton and willful disregard of the likelihood that the natural tendency of said act would cause death or great bodily harm.

The photographs, while graphic in nature, support and corroborate the testimony of the medical examiner as to the cause of Sterling's death. The photos also help prove that the defendant acted deliberately, which is one of the elements for second degree murder – that the defendant acted knowingly or intentionally, with intent to kill, to do great bodily harm, or to act in wanton and willful disregard of the likelihood that the natural tendency of said act would cause death or great bodily harm.

"[E]vidence is not unfairly prejudice simply because it is gruesome or disturbing. *U.S. v. Brady*, 595 F.2d 359 (6th Cir. 1979). Photographs provide unique visual information that the Medical Examiner's testimony may not. In *U.S. v. Benally*, 656 F. App'x 858, 859 (9th Cir. 2016) (unpublished), the court held that "the [autopsy] photos were probative of how the victim died and the level of Benally's intent when the shot occurred. The expert testimony on the cause of death did not make the photographs duplicative because a visual depiction may be easier to grasp than medical testimony." In *U.S. v. Soundingsides*, 820 F.2d 1232, 1243 (10th Cir. 1987) the court held that "these autopsy slides were a substantial aid in illustrating the testimony of the pathologist, and they had considerable probative value not only proving the nature of [victim's] injuries and the cause of her death, but also on the issue of malice aforethought…[T]heir admission was not unduly prejudicial."[3]

---

[3] In *Soundingsides*, the Charge was Second degree murder, and the body was found badly beaten and wrapped in a green blanket. Scene photographs and additional autopsy photos were shown at the trial.

Even in a case involving an inmate death by prison guards, far more extreme that than case at bar, a court has affirmed the admission of autopsy photographs in part "because of the extent of the victim's injuries established a cruel and unusual punishment occurred and underscored the moral blame attaching to [the defendant]'s decision to cover up the crime." *U.S. v. Velazquez*, 246 F.3d 204, 211 (2d Cir. 2001).[4]

Even if the defense were to stipulate to the cause of death, the People are entitled to introduce its own evidence to prove every element of its case. *See Old Chief v. United States*, 519 U.S. 172 (1997); *U.S. v. Hebeka*, 25 F.3d 287 (6th Cir, 1994). "The government is not required to accept the defendant's stipulations, and the defendant has no right to selectively stipulate to, particular elements of the offense." *Hebeka*, 25 F.3d at 291.

There is a two-prong test that must be met in order for evidence to be admissible under FRE 401. First, the evidence in question must be material, or

---

[4] The indictment charged Regnier and Velazquez with violating 18 U.S.C. §§ 241 and 242 by depriving Pizzuto of his right "not to be subjected to cruel and unusual punishment, by one acting under color of law, resulting in bodily injury and death." Sections 241 and 242 provide that, if death results from the acts that violate these statutes, the maximum punishments are life imprisonment or the death penalty. Bergen was indicted as an accessory after the fact under 18 U.S.C. § 3, which specifies a maximum penalty of fifteen years if the maximum punishment for the accessory's principal is life imprisonment or the death penalty. Regnier and Velazquez pled guilty; Bergen went to trial. At Bergen's trial, he admitted the assault and its causal connection to Pizzuto's death, but unsuccessfully tried to persuade the jury that his report truthfully reflected the circumstances that he believed to have existed.

within the range of litigated controversy.  Second, the court must determine whether the evidence makes a fact of consequence more or less probable than it would be without the evidence.  As discussed above, the evidence is material.  It shows the complainant died from blunt force trauma due to being struck with a motor vehicle. The photos make those facts more probable than they would be without admission of the photographs.

Admission of the above-mentioned photographs will not unduly prejudice the jury.  The People are seeking to admit only those photographs which are "necessary in furthering the probative force and have omitted those that were repetitive or too gruesome and unfairly prejudicial.  The People have at our disposal approximately 69 photographs to choose from.  We have already redacted the photographs. We have asked for the admission of only 16 clinical autopsy photographs (13 photographs of the exterior of the decedent's body and 3 photographs of the interior of the decedent's body), the relevant photographs that depict the nature of the wounds inflicted.

WHEREFORE, the People respectfully ask this Honorable Court to grant the People's request for the admission of autopsy photographs at trial.

Respectfully submitted,

DANA NESSEL
Michigan Attorney General

/s/ ORONDE C. PATTERSON, P57211
Assistant Attorney General

/s/ ERIKA A. TUSAR, P56831
Assistant Attorney General

/s/ JOHN S. PALLAS, P42512
Assistant Attorney General

Criminal Trials Division
3030 W. Grand Blvd. #10-200
Detroit, MI 48202
(313) 456-0180